United States District Court
Southern District of Texas
**ENTERED**
August 15, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DAVID TYRONE THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-136 |
| | § | |
| CITY OF KINGSVILLE, TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff David Tyrone Thomas's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that Plaintiff's false arrest/false imprisonment and excessive force claims be retained against certain John Doe

defendants in their individual capacities. It is respectfully recommended further that: (1) Plaintiff's claims for money damages against all defendants in their official capacities be dismissed as barred by the Eleventh Amendment; and (2) Plaintiff's claims against the remaining defendants be dismissed as frivolous and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I. JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the James V. Allred Unit in Iowa Park, Texas. Plaintiff is currently serving the following sentences out of Kleberg County: (1) a twenty-year sentence for evading arrest; (2) a twenty-five year sentence for tampering with evidence; and (3) a twenty-year sentence for evading arrest with a prior conviction. Plaintiff was sentenced for each conviction on January 11, 2017.

The facts giving rise to Plaintiff's claims in this civil rights action occurred in connection with Plaintiff's arrests and detention by City of Kingsville police officers and Kleberg County deputies. Plaintiff filed his original complaint on May 11, 2018, naming the following defendants: (1) the City of Kingsville, Texas; (2) Kingsville Police Department; (3) Kleberg County Sheriff's Department; (4) Kleberg County District Attorney; (5) Kingsville Police Chief Ricardo Torres; (6) Kingsville Police Officer Gilbert Rodriguez; (7) unknown City of Kingsville police officers; (8) Kleberg County

Sheriff Kirk Patrick; (9) unknown Kleberg County deputies; and (10) Kleberg County District Attorney John Hubert. (D.E. 1, pp. 1, 3). Plaintiff seeks monetary relief. (D.E. 1-1, p. 10).

On July 19, 2018, a *Spears*[1] hearing was conducted where Plaintiff was given an opportunity to explain his claims. The following allegations were made in Plaintiff's original complaint (D.E. 1) or at the hearing.

**A. Events on or about June 9, 2016**

On or about June 9, 2016, Plaintiff was awakened at his girlfriend's residence with a gun in his face by two unidentified police officers from the Kingsville Police Department. The police officers, who did not have an arrest warrant, entered the premises because the front door was wide open. Plaintiff was arrested, detained, and charged with possession of a controlled substance and drug paraphernalia. Plaintiff did not know what happened with the charges but believed they were subsequently dismissed. Plaintiff was released from prison on or about June 22, 2016.

At the time Plaintiff was arrested on or about June 9, 2016, Plaintiff was on probation from three felony convictions. A petition to revoke Plaintiff's probation was filed in Kleberg County. As a result, Plaintiff was arrested one week later pursuant to an arrest warrant. According to Plaintiff, the false drug charges brought against Plaintiff caused his probation to be revoked on June 26, 2016. At the probation hearing, Plaintiff did not admit as true the conduct that led to his arrest on June 9, 2016. Rather, Plaintiff

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985*); see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

agreed to admit to certain violations of his probation that were unrelated to his arrest. Plaintiff testified his probation was reinstated with modifications that included more stringent conditions. Plaintiff was released from custody on August 4, 2016.

**B. Events on or about August 17 and August 24, 2016**

On August 17, 2016, Plaintiff was walking on a Kingsville street where he was falsely arrested without probable cause by Kingsville police officers for public intoxication. Plaintiff's arrest occurred on a sidewalk close to his home. While Plaintiff was taking medications for an unknown mental illness, he had not consumed any alcoholic beverages. Plaintiff passed all tests that were administered to him by the officers. Nevertheless, at the direction of a supervising officer whom Plaintiff could not identify, Kingsville Police Officer Gilbert Rodriguez arrested Plaintiff for public intoxication.

Following his arrest for public intoxication, Plaintiff was taken to jail for eight hours before he was released. According to Plaintiff, there is no record of his arrest for public intoxication. One week later, Plaintiff was confronted by a Kingsville Police officer while Plaintiff was attending a job force class at the local university. The police officer escorted Plaintiff to his patrol car and started asking Plaintiff questions. Another Kingsville police officer got involved and looked through Plaintiff's bag. Plaintiff acknowledged getting frustrated with the officers.

An ambulance arrived onto the scene, whereupon a Kingsville police officer instructed Plaintiff that his vital signs would be checked. Plaintiff refused to go inside the ambulance. The officer warned Plaintiff that he would be restrained if he did not

enter into the ambulance. Plaintiff expressed his concern about being given certain medications while he was on probation. Plaintiff testified that he was getting angry at the actions of the officer in restraining Plaintiff and threatening to inject needles into him.

Plaintiff eventually was taken to the hospital where he fell asleep while waiting to be examined. After waking up, Plaintiff informed the nurse that he was going to leave. The nurse responded that she needed to obtain Plaintiff's discharge papers. When Plaintiff was about to leave, a Kleberg County deputy approached Plaintiff's hospital room. The officer informed Plaintiff that he would be transported to another hospital. Plaintiff, however, responded that he would be leaving as the officer had no arrest warrant. Plaintiff and the officer engaged in a verbal altercation about whether Plaintiff should return to his hospital room. Another deputy, who Plaintiff described as a Kleberg County sergeant intervened in the situation. Both Kleberg County officers prevented Plaintiff from leaving and instructed Plaintiff to wait until the nurse completed her paperwork.

Plaintiff returned to his hospital room. Several Kingsville police officers then arrived at the hospital and began talking outside of Plaintiff's room. The nurse informed Plaintiff that the officers were going to take Plaintiff away. None of the officers indicated to Plaintiff why he was about to be transported to another hospital. While brandishing their taser guns, the officers ordered Plaintiff to submit. Plaintiff remained calm at this point, but officers began to manhandle and place handcuffs on Plaintiff. After Plaintiff kicked at an object on the floor, two Kleberg County sheriff officers grabbed Plaintiff and slammed him against the wall. The actions of these officers, who

were described by Plaintiff as a sergeant and deputy, caused Plaintiff to suffer a chipped tooth and pain.

Plaintiff ultimately was taken outside and handed over to the City of Kingsville police. Two Kingsville police officers informed Plaintiff that he would be taken to a mental hospital in the valley. While Plaintiff was being placed in the patrol car, two Kingsville police officers began to strike and choke Plaintiff. One police officer struck Plaintiff in the stomach. Plaintiff suffered bruises on his arms and was in pain for four to five days. Plaintiff did not know whether these officers had a mental health warrant to arrest Plaintiff and transport him to a mental hospital.

Plaintiff testified that he was taken to the mental health hospital that day and was released about three weeks later. Plaintiff ultimately was charged by Kingsville police officers with resisting arrest. Plaintiff stated in his original complaint that the resisting arrest charge was subsequently dismissed.

A petition to revoke Plaintiff's probation was filed in Kleberg County, where Plaintiff was charged with several probation violations. Plaintiff was represented by an attorney at the probation revocation hearing, which occurred several months later. According to Plaintiff, the probation violation charge relating to resisting arrest was dismissed. In revoking Plaintiff's probation, the county judge found as true the allegations that Plaintiff had committed the crime of public intoxication. The Kleberg County judge further found as true several other allegations relating to Plaintiff's violations of the conditions of probation.

Plaintiff generally complains that Kingsville police officers have engaged in a campaign to harass him. Plaintiff testified that he has named Kingsville Police Chief Ricardo Torres and the City of Kingsville as bearing responsibility for the subordinate police officers' actions against Plaintiff. Plaintiff was advised by his probation officer that District Attorney Hubert was working with the police to arrest Plaintiff, bring false charges against him, and move for the revocation of Plaintiff's parole. Plaintiff believed that District Attorney Hubert acted with prejudice against him due to his past criminal record.

Plaintiff also has named Kleberg County Sheriff Patrick as a defendant. Plaintiff acknowledges that Sheriff Patrick was not personally involved and that he is sued as the head of the police department.

## III. LEGAL STANDARD.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski_v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The complaint must be liberally construed

in favor of the prisoner and the truth of all pleaded facts must be assumed. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).

A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).

## IV. DISCUSSION

### A. Official Capacity Claims and Municipal Liability

#### *(1) Police and Sheriff's Departments*

Plaintiff names the Kingsville Police Department and the Kleberg County Sheriff's Department as defendants in this case. Both of these defendants, as departments of the City of Kingsville and Kleberg County respectively, are not entities capable of being sued. *Darby v. Pasadena Police Dep't,* 939 F.2d 311, 313-14 (5th Cir. 1991). Instead, the proper parties are the City of Kingsville and Kleberg County. *See Morgan v. Nueces County*, C-08-358, 2009 WL 197558, at *3 (S.D. Tex. Jan. 27, 2009); *Rogers v. Nueces County Jail*, No. C-07-410, 2007 WL 4367814, at *4 (S.D. Tex. Dec. 13, 2007).

Thus, it is respectfully recommended that Kleberg County be substituted in place of the Kleberg County Sheriff's Office as a party defendant in this case. As Plaintiff has already named the City of Kingsville as a party defendant, it is respectfully recommended further that the Kingsville Police Department be dismissed with prejudice.

***(2) Suits against the Municipalities and Individual Defendants in their Officials Capacities***

The undersigned construes Plaintiff's action as suing all individual defendants in their official capacities even though he fails to make such a specification in his original complaint. Nevertheless, such official capacity suits "generally represent only another way of pleading an action against an entity of which the officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotations and citation omitted). Plaintiff's lawsuit against all of the individual City of Kingsville and Kleberg County officials are effectively a suit against the City of Kingsville and Kleberg County. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Johnson v. Hurtt*, 893 F. Supp. 2d 817, 828 (S.D. Tex. 2012). Accordingly, it is respectfully recommended that Plaintiff's claims against all individual defendants in their official capacities be dismissed with prejudice.

In order to show that either the City of Kingsville or Kleberg County was liable for any constitutional violations based on Plaintiff's allegations, Plaintiff must show that any constitutional deprivations were caused by (1) an official policy or custom; (2) promulgated by the municipal policy-maker; (3) that was the moving force behind the violation of his constitutional rights. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 694 (1978)). Municipal liability cannot be established on the basis of respondeat superior. *Monell*, 436 U.S. at 694. A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts

directly attributable to it "through some official action or imprimatur." *Piotrowski*, 237 F.3d at 578.

Official policy can arise in various forms. It may be a policy statement, ordinance, regulation, or decision that has been officially adopted and promulgated by a policy maker. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). In addition, it may arise in the form of a wide-spread practice that, while unofficial, is "so common and well-settled as to constitute a custom that fairly represents municipal policy. *Piotrowski*, 237 F.3d at 579 (quoting *Webster,* 735 F.2d at 841).

Plaintiff has alleged no facts in this case suggesting that the City of Kingsville or Kleberg County had either an official policy or a wide-spread practice that compelled officers employed by these municipalities to deprive individuals of their rights through false arrests and excessive uses of force. Plaintiff simply alleges in a conclusory fashion that the City of Kingsville and Kleberg County should bear responsible for the actions of their police officers. Such allegations are insufficient to state a § 1983 claim against these municipal entities. Accordingly, it is respectfully recommended that Plaintiff's claims against the City of Kingsville and Kleberg County be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

**B. Individual Capacity Claims**

***(1) Supervisory Liability***

Plaintiff sues Kingsville Police Chief Torres and Kleberg County Sheriff Patrick in their supervisory roles. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no

vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional deprivation. *Evett v. Deep East Tex. Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003) (citing *Thompkins*, 828 F.2d at 304).

Plaintiff fails to allege any facts to suggest that either Chief Torres or Sheriff Patrick participated in any acts causing constitutional violations or that a causal connection exists between these defendants' conduct and the alleged constitutional deprivations. Accordingly, it is respectfully recommended that Plaintiff's claims against Chief Torres and Sheriff Patrick in their supervisory roles be dismissed as frivolous and/or for failure to state a claim for relief.

***(2) Prosecutorial Immunity***

Plaintiff claims that the District Attorney Hubert acted with prejudice toward Plaintiff by conspiring with police to arrest Plaintiff, bring false charges against him, and move for the revocation of Plaintiff's probation. "A prosecutor enjoys absolute immunity when his actions are 'intimately associated with the judicial phase of the criminal process.'" *Loupe v. O'Bannon*, 824 F.3d 534, 538 (5th Cir. 2016) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

> Absolute prosecutorial immunity is meant to "protect[ ] the prosecutor from harassing litigation that would divert his time and attention from his official duties" and to "enable[e] him to exercise independent judgment when 'deciding which suits to bring and in conducting them in court.'" [*Kalina v. Fletcher*, 522 U.S. 118, 125 (1997)] (quoting *Imbler*, 424 U.S. at 424).... The Supreme Court has made clear that "it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance." *Id.* Thus, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259 ... (1993).

*Loupe*, 824 F.3d at 539. When deciding whether a defendant is entitled to absolute immunity, a court applies the functional approach, looking at the nature of the function performed rather than the identity of the actor who performed it. *Id.* Actions protected by absolute immunity include initiating and pursuing a criminal prosecution, court actions taken in a prosecutor's role as advocate for the state, or when his conduct is "'intimately associated with the judicial phase of the criminal process.'" *Id.* (quoting *Hart v. O'Brien*, 127 F.3d 424, 439 (5th Cir. 1997), *abrogation on other grounds recognized by Spivey v. Robertson*, 197 F.3d 772, 775–76 (5th Cir. 1999)).

Plaintiff essentially sues District Attorney Hubert for his role in bringing alleged false charges against him designed to secure his probation revocation. Plaintiff's allegations are based on conduct intimately associated with District Attorney Hubert's role in initiating and pursuing criminal prosecution against Plaintiff. Because District Attorney Hubert is entitled to absolute immunity for the actions described by Plaintiff, it is respectfully recommended that Plaintiff's claims against him be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

***(3) False arrest/False Imprisonment Claims***

In order to state either a false arrest or false imprisonment claim under the Fourth Amendment, Plaintiff must allege that the arresting officers lacked probable cause to effectuate the arrest. *See Evans v. City of Meridian Miss.*, 630 F. App'x 312, 315 (5th Cir. 2015); *Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (*5th Cir. 2004) (citing Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001)); Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). A Fourth Amendment false imprisonment claim consists of detention without legal process. *Wallace v. Kato*, 549 U.S. 384, 389 (2007).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486-87.

Subsequently, in *Jackson v. Vannoy,* 49 F.3d 175 (5th Cir.1995), a state prisoner filed a *pro se* civil rights action against the police alleging that his illegal arrest resulted in the revocation of probation and parole on other charges. The Fifth Circuit applied *Heck* to bar the illegal seizure claim, explaining that:

> A judgment in favor of Jackson on his illegal seizure claim would necessarily imply the invalidity of the revocation of his probation and parole. It logically follows that *Heck* applies to Jackson's probation and parole revocation proceedings. Jackson has not demonstrated that his current sentence has already been invalidated. He does not allege that any revocation proceeding has been reversed, expunged, set aside by a state court, or called into question by a federal court's issuance of a writ of

> habeas corpus. Thus, Jackson's action is not cognizable under § 1983 at this time ….

*Id.* at 177.

Plaintiff claims he was falsely arrested and detained without probable cause on three separate occasions in August 2016 on various charges which were subsequently dismissed. Plaintiff complains that all of the dismissed charges were used in two separate probation revocation proceedings to obtain either more restrictive modifications to the conditions of his probation or outright revocation of his probation.

Plaintiff alleges that on June 9, 2016, he was falsely arrested and detained in jail on two drug charges which, he believes, were subsequently dismissed. Following his arrest on these charges, a petition to revoke Plaintiff's probation was filed in Kleberg Count. According to Plaintiff, his probation ultimately was reinstated but with more stringent conditions based on Plaintiff's admission to certain violations of his probation unrelated to his arrest on the drug charges. Plaintiff was released from custody on August 4, 2016.

Plaintiff further alleges that: (1) on August 17, 2016, he was falsely arrested by Officer Gilbert Rodriguez and detained in jail on the charge of public intoxication, which, he believes, was subsequently dropped; and (2) on August 24, 2016, Plaintiff was falsely arrested, restrained, and sent to a mental hospital in connection with a resisting arrest charge which, he also believes, was dismissed at a later time. A petition to revoke Plaintiff's probation was then filed in Kleberg County, where Plaintiff was charged with several probation violations. According to Plaintiff, the probation violation charge

relating to resisting arrest was dismissed. In revoking Plaintiff's probation, the county judge found as true the allegations that Plaintiff had committed the crime of public intoxication as well as several other allegations relating to Plaintiff's violations of the conditions of probation.

Because Plaintiff's allegations that his public intoxication arrest served as a basis for revoking his probation, his false arrest/imprisonment claim against Officer Rodriguez in connection with his August 17, 2016 arrest is *Heck* barred. *Jackson*, 49 F.3d at 177. Any judgment in favor of Plaintiff on his false arrest/false imprisonment claims would necessarily imply the invalidity of his probation revocation. Plaintiff fails to suggest that this probation revocation has been reversed or otherwise called into question by the issuance of a writ of habeas corpus. Accordingly, it is respectfully recommended that Plaintiff's false arrest/imprisonment claims arising from his arrest on August 17, 2016 for public intoxication be dismissed with prejudice as *Heck* barred.

Plaintiff's claims relating to his false arrest/false imprisonment claims arising from his arrests on June 9, 2016 and August 24, 2016 are not *Heck* barred because the drug and resisting arrest charges associated with these dates were dismissed and did not serve as a basis to revoke Plaintiff's probation. *See Jackson,* 49 F.3d at 177. While asserting that several John Doe officers were responsible for arresting Plaintiff, he has not identified the Kingsville police officers responsible for ordering him to be arrested in connection with either the June 9 or August 24, 2016 charges. Accordingly, the undersigned respectfully recommends that: (1) Plaintiff's false arrest/imprisonment claims arising from the June 9, 2016 drug charges be retained against Kingsville Police Arresting Officer John Doe 1;

and (2) Plaintiff's false arrest/imprisonment claims arising from the August 24, 2016 resisting arrest charge be retained against Kingsville Police Arresting Officer John Doe 2.

***(4) Excessive Force Claims***

The Fourth Amendment protects a person being arrested from the use of excessive force. *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998). As a general guideline, "[a]*ll* claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To state a claim for excessive force during the course of an arrest, a plaintiff "must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (internal quotations and citation omitted).

The Fifth Circuit recognizes that "the point at which an arrest ends and pretrial detainment begins is not always clear." *Gutierrez*, 139 F.3d at 452. The Due Process Clause of the Fourteenth Amendment rather than the Fourth Amendment begins to protect persons "*after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time." *Valencia v. Wiggins*, 981 F.2d 1440, 1443 (5th Cir. 1993) (emphasis in original). Thus, to state an excessive force claim as a pretrial detainee, Plaintiff must allege that the police officer's knowing and purposeful

use of force against him was objectively unreasonable. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015),

In addition, to succeed on an excessive force claim, a plaintiff must demonstrate that he suffered an injury that is more than *de minimis*. *Glen v. City of Tyler,* 242 F.3d 307, 314 (5th Cir, 2001). The degree of injury necessary to meet this requirement is related to the amount of force that was constitutionally permissible under the facts of the case. *Williams v. Bramer*, 180 F.3d 699, 703-04 (5th Cir.1999).

Plaintiff's allegations indicate that on August 24, 2016, he was escorted to the local hospital by City of Kingsville police officers after attending a job force class at the university. According to Plaintiff, officers from both the City of Kingsville and Kleberg County used excessive force against him as he was being held against his will at the hospital. First, while inside the hospital, Plaintiff alleged that two Kleberg County officers grabbed Plaintiff and slammed him against the wall. The actions of these officers, who were described by Plaintiff as a sergeant and deputy, caused Plaintiff to suffer a chipped tooth and pain. Second, after Plaintiff was handed over to the City of Kingsville police, two Kingsville police officers began to strike Plaintiff all over his body and choke Plaintiff. One of the officers struck Plaintiff in the stomach. Plaintiff suffered bruises on his arms and was in pain for several days.

Accepted as true, Plaintiff's allegations indicate that Kleberg County and City of Kingsville police officers used excessive force against Plaintiff on August 24, 2016. Regardless whether the excessive force occurred during the course of Plaintiff's arrest or his pretrial detainment, his allegations suggest that these officers knowingly and

purposefully used force in an objectively unreasonable manner. *Pena*, 879 F.3d at 619; *Kingsley*, 135 S. Ct. at 2473. Plaintiff's allegations further suggest that the actions of these officers caused Plaintiff to suffer more than *de minimis* injuries. *See Sam v. Richard*, No. 17, 305593, 2018 WL 1751566, (5th Cir. Apr. 12, 2018) (recognizing that "even insignificant injuries may support an excessive force claim, as long as they result from unreasonable excessive force"); *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (holding that "[a]ny force found to be objectively unreasonable exceeds the *de minimis* threshold").

Accordingly, it is respectfully recommended that Plaintiff's excessive force claims be retained against: (1) Kleberg County Officers Sergeant John Doe 3 and Deputy John Doe 4; and (2) Kingsville Police Officers John Does 5 and 6.

## V. CONCLUSION.

For the reasons stated above, it is respectfully recommended that Kleberg County be substituted in place of the Kleberg County Sheriff's Office as a party defendant in this case. It is respectfully recommended further that the Court retain the following claims: (1) Plaintiff's false arrest/false imprisonment claims arising from the June 9, 2016 drug charges be retained against Kingsville Police Arresting Officer John Doe 1 in his individual capacity; (2) Plaintiff's false arrest/imprisonment claims arising from the August 24, 2016 resisting arrest against Kingsville Police Arresting Officer John Doe 2 in his individual capacity; (3) Plaintiff's excessive force claims against Kleberg County Officers Sergeant John Doe 3 and Deputy John Doe 4 in their individual capacities; and (4) Plaintiff's excessive force claims against Kingsville Police Officers John Does 5 and

6 in their individual capacities. The undersigned will order service on these defendants in a separate order.

Next, it is respectfully recommended that Plaintiff's claims for money damages against all Defendants in their official capacities be dismissed as barred by the Eleventh Amendment. Lastly, it is respectfully recommended that Plaintiff's claims against the remaining Defendants be dismissed as frivolous and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 15th day of August, 2018.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).