United States District Court
Southern District of Texas
**ENTERED**
March 31, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DAVID TYRONE THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-00136 |
| | § | |
| CITY OF KINGSVILLE, TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## ON PENDING MOTIONS FOR SUMMARY JUDGMENT

Plaintiff David Tyrone Thomas, appearing *pro* se and *in forma* pauperis, has filed this *pro se* prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court are: (1) a Motion for Summary Judgment filed by Defendants Robert Wright, Carlos Del Moral, and Emmanuel Gonzalez (D.E. 78); (2) a Motion for Summary Judgment filed by Defendant Kevin Martinez (D.E. 82); and (3) a Motion for Summary Judgment filed by Defendant Michael Chavana (D.E. 83).  For the reasons discussed below, it is respectfully recommended that the summary judgment motion filed by Defendants Wright, Del Moral, and Gonzalez (D.E. 78) be granted in part and denied in part.  It is respectfully recommended further that the summary judgment motions filed by Defendants Martinez and Chavana (D.E. 82, 83) be granted.

# I.     JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  This case was referred to the undersigned United States Magistrate Judge for case management and to furnish a recommendation pursuant to 28 U.S.C. § 636.

# II.    PROCEDURAL BACKGROUND

The facts giving rise to Plaintiff's claims in this civil rights action occurred in connection with Plaintiff's arrests and detention by City of Kingsville police officers and Kleberg County deputies. Plaintiff filed his original complaint on May 3, 2018, naming the following defendants: (1) the City of Kingsville, Texas; (2) Kingsville Police Department; (3) Kleberg County Sheriff's Department; (4) Kleberg County District Attorney; (5) Kingsville Police Chief Ricardo Torres; (6) Kingsville Police Officer Gilbert Rodriguez; (7) unknown City of Kingsville police officers; (8) Kleberg County Sheriff Kirk Patrick; (9) unknown Kleberg County deputies; and (10) Kleberg County District Attorney John Hubert. (D.E. 1, pp. 1, 3). Plaintiff seeks monetary relief. (D.E. 1-1, p. 10).  All discovery in this case was stayed until an answer was filed.  (D.E. 7, p. 2).

On July 19, 2018, a *Spears*[1] hearing was conducted where Plaintiff was given an opportunity to explain his claims. On August 15, 2018, former Magistrate Judge B. Janice Ellington issued a Memorandum and Recommendation (August 15, 2018 M&R) recommending that the Court retain only the following claims: (1) Plaintiff's false

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

arrest/false imprisonment claims arising from certain events occurring on or around June 9, 2016 be retained against Kingsville Police Arresting Officer John Doe 1 in his individual capacity; (2) Plaintiff's false arrest/imprisonment claims arising from certain events occurring on or around August 24, 2016 against Kingsville Police Arresting Officer John Doe 2 in his individual capacity; (3) Plaintiff's excessive force claims arising from certain events occurring on or around August 24, 2016 against Kleberg County Officers Sergeant John Doe 3 and Deputy John Doe 4 in their individual capacities; and (4) Plaintiff's excessive force claims arising from certain events occurring on or around August 24, 2016 against Kingsville Police Officers John Does 5 and 6 in their individual capacities. (D.E. 10).

In a separate order entered on August 15, 2018, Magistrate Judge Ellington ordered service of Plaintiff's complaint on the six John Doe defendants. (D.E. 11).   Senior District Judge Hilda G. Tagle subsequently adopted the August 15, 2018 M&R in its entirety. (D.E. 38).

On November 29, 2018, Magistrate Judge Ellington entered an order, directing the Clerk of Court to: (1) substitute Sergeant Robert Wright in place of Kleberg County Sergeant John Doe 3 as a party defendant; (2) substitute Kingsville Officer Kevin Martinez in place of Kingsville Police Arresting Officer John Doe 1 as a party defendant; and (3) substitute Kingsville Officer Michael Chavana in place of Kingsville Police Arresting Officer John Doe 2 as a party defendant.2 (D.E. 31, p. 6).   Defendants Martinez and Chavana had already filed answers on October 2, 2018.  (D.E. 21, 22).

As part of the November 29, 2018 Order, Magistrate Judge Ellington directed Plaintiff to provide within thirty days any information to help identify: (1) Kleberg County Deputy John Doe 4; and (2) Kingsville Police Officers John Does 5 and 6. (D.E. 31, p. 6). On December 26, 2018, Plaintiff filed his Motion to Supplement Officers' Names. (D.E. 35). In his motion, Plaintiff attached a Supplemental Report from the Kleberg County Sheriff's Office which identified "Kingsville Police Officers John Does 5 and 6" as Kleberg County Deputies Emmanuel Gonzalez and Carlos Del Moral. (D.E. 35, p. 1; D.E. 35-2). He also believed that "Kleberg County Deputy John Doe 4" was Kingsville Police Officer Figueroa. (D.E. 35, p. 1).

By order entered on June 18, 2019, Magistrate Judge Ellington granted Plaintiff's motion to supplement to the extent that the Clerk to substitute: (1) Kleberg County Deputy Emmanuel Gonzalez in place of Kingsville Police Officer John Doe 5; and (2) Kleberg County Deputy Carlos Del Moral in place of Kingsville Police Officer John Doe 6. (D.E. 40, p. 5). Magistrate Judge Ellington denied Plaintiff's motion in all other respects, specifically finding that Plaintiff had presented insufficient information to identify Officer Figueroa as a defendant in this case. (D.E. 40, p. 6).

On June 19, 2019, Defendant Wright filed an Amended Motion to Dismiss for Failure to State a Claim. (D.E. 42). Defendants Gonzalez and Del Moral subsequently filed a Motion to Dismiss or Abate. (D.E. 44). On November 19, 2019, Magistrate Judge Ellington issued a Memorandum and Recommendation (November 19, 2019 M&R), recommending that: (1) the motions to dismiss filed by Defendants Wright, Gonzalez, and

Del Moral be granted; (2) Plaintiff's claims against Defendants Wright, Gonzales, and Del Moral be dismissed with prejudice as barred by the expiration of the applicable two-year statute of limitations; and (3) the motion to abate filed by Defendants Gonzalez and Del Moral be denied.  (D.E. 48).

On April 1, 2020, Senior District Judge Tagle adopted in part and declined to adopt in part the November 19, 2019 M&R.  (D.E. 53).  Specifically, Senior District Judge Tagle declined to adopt the recommendation to grant the motions to dismiss on statute of limitations grounds.  (D.E. 53, pp. 3-4).  Defendants Wright, Del Moral, and Gonzalez subsequently filed answers.  (D.E. 55, 56, 57).

On October 9, 2020, Defendants Wright, Del Moral, Gonzalez, Martinez, and Chavana filed three motions for summary judgment.  (D.E. 78, 82, 83).  Plaintiff has responded to each summary judgment motion.  (D.E. 92, 93, 94).

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no

reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

## IV.    DISCUSSION

In the summary judgment motions, Defendants each claim they are entitled to qualified immunity. Government officials performing discretionary duties can respond to § 1983 claims by asserting qualified immunity. *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (citing *Haverda v. Hays Cty.*, 723 F.3d 586, 598 (5th Cir. 2013)).

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Government officials are given "breathing room to make reasonable but mistaken judgments" and "all but the plainly incompetent or those who knowingly violate the law" are protected. *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (citations omitted). Qualified immunity "represents the norm, and courts should deny a defendant immunity only in rare circumstances." *Rich*, 920 F.3d at 294; *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (Courts "must think twice before denying qualified immunity.").

The usual summary judgment burden of proof is altered in the case of qualified immunity defense. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity alleging the actions taken

were in good faith and within the scope of discretionary authority, the burden is on the plaintiff to establish the official's conduct violated clearly established law. *Id*. Plaintiff cannot rest on pleadings but instead must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Id*.; *Bazan v. Hidalgo Cty*., 246 F.3d 481, 489-90 (5th Cir. 2001).

To survive summary judgment on the issue of qualified immunity, a plaintiff must satisfy two independent inquiries. First, whether viewing the summary judgment evidence in the light most favorable to plaintiffs, the defendants violated the alleged victim's constitutional rights. *Freeman v. Gore,* 483 F.3d 404, 410 (5th Cir. 2007); *Delaughter v. Woodall*, 909 F.3d 130, 137-38 (5th Cir. 2018). If the Court determines "that the alleged conduct did not violate a constitutional right, [the] inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity." *Lytle v. Bexar Cnty., Tex.,* 560 F.3d 404, 410 (5th Cir. 2009) (citation omitted). If there is a genuine dispute of material fact regarding whether there was a constitutional rights violation, the Court then asks whether defendants' actions were objectively unreasonable in light of the clearly established law at the time of the constitutional violation. *Freeman,* 483 F.3d at 411; *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (The second prong requires courts to "ask whether the right was clearly established—that is, whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'") (citation omitted).

If the Court answers both questions in the affirmative, the government official is not entitled to qualified immunity.  *Lytle,* 560 F.3d at 410.  Courts are permitted to exercise discretion in determining the order in which to analyze the two-part qualified immunity test.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citations omitted).

At this stage, a court's qualified immunity inquiry requires a court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty*, 391 F.3d at 655; *Tolan v. Cotton*, 572 U.S. 650, 651, 657-59 (2014).  "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity."  *Id*. ("This inquiry is an objective one, not dependent on the particular officer's subjective beliefs.") (citation omitted).

## A.    Defendant Martinez's Summary Judgment Motion

### *(1)    Summary Judgment Evidence*

The summary judgment evidence presented by Officer Martinez includes:

| | |
|---|---|
| Exh. 1: | Officer Martinez's Declaration (D.E. 82-2). |
| Exh. 2: | Copy of Docket Sheet in Cause No. 14-CRF-0281-S1 (D.E. 82-3). |
| Exh. 3: | Order of Deferred Adjudication in Cause No. 14-CRF-0281-S1 (D.E. 82-4). |
| Exh. 4: | First Amended Motion to Revoke Community Supervision and to Adjudicate Guilt in Cause No. 14-CRF-0281-S1 (D.E. 82-5). |

Exh. 5:        August 3, 2016 Transcript of Hearing on Motion to Revoke Probation in Cause No. 14-CRF-0281-S1 and Cause No. 14-CRF-0353-S2 (D.E. 82-6).

Exh. 6:        Order Imposing Sanctions on Defendant and Continuing or Modifying Community Supervision in Cause No. 14-CRF-0281-S1, signed August 5, 2016  (D.E. 82-7).

Exh. 7:        Amended Conditions of Community Supervision in Cause No. 14-CRF-0281-S1, signed August 9, 2016 (D.E. 82-8).

Exh. 8:        Copy of Docket Sheet in Cause No. 14-CRF-0353-S2 (D.E. 82-9).

Exh. 9:        Order of Deferred Adjudication in Cause No. 14-CRF-0353-S2 (D.E. 82-10).

Exh: 10:       First Amended Motion to Revoke Community Supervision and to Adjudicate Guilt in Cause No. 14-CRF-0353-S2 (D.E. 82-11).

Exh. 11:       Order Imposing Sanctions on Defendant and Continuing or Modifying Community Supervision in Cause No. 14-CRF-0353-S2, signed August 5, 2016  (D.E. 82-12).

Exh. 12:       Amended Conditions of Community Supervision in Cause No. 14-CRF-0353-S2, signed August 9, 2016 (D.E. 82-13).


Plaintiff's summary judgment evidence includes:


- Plaintiff's verified complaint (D.E. 1).

- Transcript of the July 19, 2018 *Spears* Hearing (D.E. 98).

- Sheet listing Plaintiff's 2016 Kleberg County arrests (D.E. 94, p. 5).

### (2)   Undisputed Summary Judgment Evidence

In April 2015, Plaintiff pled guilty in two separate felony cases in the 105th District Court of Kleberg County.  (D.E. 82-4; D.E. 82-10).  He was placed on probation pursuant to orders of deferred adjudication.  (*Id.*).

On June 16, 2016,[2] Officer Martinez was dispatched to 1032 E. Caesar Ave., Kingsville, Texas, to assist Parole Office Sasha Flores who was intending to meet with a parolee named Jamie Barrigan, Plaintiff's girlfriend at that time.  (D.E. 82-2, p. 1).  Officer Martinez observed that the front door was wide open and entered the home out of concern that someone inside was hurt or a burglary was in progress.  (*Id.*).  Officer Martinez and another officer announced their presence as they entered the home.  (*Id.* at 2).

Officer Martinez observed on the bed between Plaintiff and Ms. Barrigan a clear baggie of what appeared to be marijuana or a synthetic marijuana, along with a foil pipe used to smoke marijuana or other substances.  (*Id.*).  After Officers Martinez and Gonzalez confirmed the substance in the baggie was synthetic marijuana, Officer Martinez arrested Plaintiff and Ms. Barrigan for possession of a controlled substance and possession of drug paraphernalia.  (*Id.*).  Plaintiff subsequently admitted to Officer Martinez that the synthetic marijuana was his.  (*Id.*).

---

[2] While Plaintiff alleges in his complaint that the events leading to his arrest occurred on June 9, 2016, the uncontroverted summary judgment presented establishes the events occurred on June 16, 2016.

On June 28, 2016, Kleberg County prosecutors filed amended motions to revoke Plaintiff's probation in both felony criminal cases, alleging a number of grounds for revocation.  (D.E. 82-5; D.E. 82-11).  Count 2 of each motion alleged that "[Plaintiff] committed the offense of Possession of a Controlled Substance on or about June 16, 2016 in Kleberg County, Texas, in violation of Condition A of Conditions of Community Supervision."  (D.E 82-5, p. 1; D.E. 82-11, p. 1).  Count 3 in each  motion alleged that "[Plaintiff] committed the offense of Possession of a Drug Paraphernalia on or about June 16, 2016 in Kleberg County, Texas, in violation of Condition A of Conditions of Community Supervision."  (*Id.*).

At a hearing on August 3, 2016 in both cases, Plaintiff plead true to all counts in the amended motions to revoke.  (D.E. 82-3; 82-6, p. 3; D.E. 82-9).  On the basis of Plaintiff's plea, the trial court found the allegations to be true and imposed sanctions.  (D.E. 82-7, D.E 82-12).  At a hearing on January 11, 2017, the state court revoked Plaintiff's probation and sentenced him to twenty years in prison.  (D.E. 82-3, pp. 3-4; D.E. 82-9, pp. 3-4).  The judgment was later affirmed on appeal.  *Thomas v. State*, Nos. 13-17-0068-CR and 13-17-00069-CR, 2017 WL 6616739 (Tex. App.-Corpus Christi Dec. 28, 2017, no pet.).

### (3)   Analysis of Fourth Amendment Claim Against Officer Martinez

Plaintiff claims that Officer Martinez arrested him without probable cause in violation of the Fourth Amendment. An officer violates the Fourth Amendment if an arrest is made without a proper arrest warrant or probable cause. *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994) (citations omitted); *see also Babb v. Dorman*, 33 F.3d 472,

477 (5th Cir. 1994). In this case, it is undisputed that Officer Martinez acted without the benefit of a warrant. The inquiry, therefore, focuses on the existence of probable cause to support Plaintiff's arrest.

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000). "If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).

"An officer may conduct a warrantless arrest based on probable cause that an individual has committed even a minor offense, including misdemeanors." *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). Moreover, evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id*. Accordingly, an officer's own testimony regarding the occurrence of an arrestable violation can by itself support a finding of probable cause, even in the face of the plaintiff's denial of that violation. *Id*.

Officer Martinez contends that the facts demonstrate he had probable cause to arrest Plaintiff for possession of a controlled substance and possession of drug paraphernalia. (D.E. 82, pp. 5-6). Plaintiff responds that Officer Martinez failed to establish probable

cause because he had no reason to enter the house on June 16, 2016 and all charges arising from the arrest have been dismissed.  (D.E. 94, p. 1).

Officer Martinez has presented unrebutted summary judgment evidence demonstrating that: (1) he entered the house of Ms. Barrigan after observing the front door was wide open and out of concern that someone inside was hurt or a burglary was in progress; (2) he observed on the bed between Plaintiff and Ms. Barrigan a clear baggie of what appeared to be marijuana or a synthetic marijuana, along with a foil pipe used to smoke marijuana or other substances; and (3) after confirming the substance in the baggie to be synthetic marijuana, Officer Martinez arrested Plaintiff and Ms. Barrigan for possession of a controlled substance and possession of drug paraphernalia.  (D.E. 82-2, pp. 1-2).

Based on this evidence, Officer Martinez had reason to believe Plaintiff had committed the charges upon which he was arrested based on the facts and circumstances within his knowledge at the moment of arrest.  *Resendiz*, 203 F.3d at 903.  Because Officer Martinez had probable cause to arrest and detain Plaintiff, his seizure of Plaintiff was constitutional under the Fourth Amendment.  Accordingly, when viewing the evidence in a light most favorable to Plaintiff, there is no genuine dispute of any material fact regarding whether Officer Martinez had probable cause to arrest Plaintiff on June 16, 2016.

Officer Martinez further argues in the alternative that Plaintiff's Fourth Amendment claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held:

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486-87.

Subsequently, in J*ackson* v. *Vannoy,* 49 F.3d 175 (5th Cir. 1995), a state prisoner filed a *pro se* civil rights action against the police alleging that his illegal arrest resulted in the revocation of probation and parole on other charges. The Fifth Circuit applied *Heck* to bar the illegal seizure claim, explaining that:

A judgment in favor of Jackson on his illegal seizure claim would necessarily imply the invalidity of the revocation of his probation and parole. It logically follows that *Heck* applies to Jackson's probation and parole revocation proceedings. Jackson has not demonstrated that his current sentence has already been invalidated. He does not allege that any revocation proceeding has been reversed, expunged, set aside by a state court, or called into question by a federal court's issuance of a writ of habeas corpus. Thus, Jackson's action is not cognizable under § 1983 at this time ….

*Id.* at 177.

Plaintiff states, without providing any supporting evidence, that the drug charges arising from the June 16, 2016 arrest were dismissed. (D.E. 94, p. 1). Contrary to this unsubstantiated statement, Officer Martinez has presented uncontroverted summary judgment evidence establishing that: (1) Kleberg County prosecutors filed amended motions to revoke Plaintiff's probation in two felony criminal cases, alleging a number of

grounds for revocation (D.E. 82-5; D.E. 82-11); (2) based on Plaintiff's plea, the Kleberg County district court found the allegations that Plaintiff had possessed drugs and drug paraphernalia on June 16, 2016 to be true (D.E. 82-7; D.E. 82-12); and (3) as such, the Kleberg County district court imposed new conditions of probation on Plaintiff in his federal cases and ordered sanctions to be imposed against him (D.E. 82-7; D.E. 82-12).

Because Plaintiff's allegations for possessing drugs and drug paraphernalia served as a basis for modifying the conditions of his probation and imposing sanctions, his Fourth Amendment false arrest claim against Officer Martinez in connection with his June 16, 2016 arrest is *Heck* barred. *Jackson*, 49 F.3d at 177. Any judgment in favor of Plaintiff on his false arrest claim would necessarily imply the invalidity of the Kleberg County court's orders modifying his probation. Plaintiff has submitted no evidence to suggest that these orders have been reversed or otherwise called into question by the issuance of a writ of habeas corpus. Accordingly, when viewing the evidence in a light most favorable to Plaintiff, there is no genuine dispute of any material fact regarding whether Plaintiff's Fourth Amendment false arrest claim arising from his June 16, 2016 arrest is *Heck* barred.

Because Plaintiff has failed to state a Fourth Amendment false arrest claim against Officer Martinez, it is unnecessary to examine whether his actions were objectively reasonable. *See Pearson*, 555 U.S. at 236; *Dyer*, 964 F.3d at 380. Thus, the undersigned respectfully recommends that the Officer Martinez is entitled to qualified immunity as well

as summary judgment with respect to Plaintiff's Fourth Amendment false arrest claim brought against him.[3]

## B.   Defendant Chavana's Summary Judgment Motion

### (1)   Summary Judgment Evidence

The summary judgment evidence presented by Officer Chavana includes:

Exh. 1:      Officer Chavana's Declaration (D.E. 83-2).

Exh. 2:      Relevant Portions of Plaintiff's Medical Records (D.E. 85).

Plaintiff's summary judgment evidence includes:

- Plaintiff's verified complaint (D.E. 1).
- Transcript of the July 19, 2018 *Spears* Hearing (D.E. 98).
- Records from the Kingsville Police Department (D.E. 92-1; 92-3).

### (2)   Undisputed Summary Judgment Evidence

On August 23, 2016,[4] Kingsville Officer Chavana responded to a call about Plaintiff causing a disturbance at Workforce Solutions and the Coastal Bend College.  (D.E. 83-2 at ¶ 3).  Plaintiff was reportedly disturbing students at the college by banging his head against the walls and yelling at students.  (D.E. 85, p. 13).  When Officer Chavana arrived at the

---

[3] Because Officer Martinez is entitled to qualified immunity as to Plaintiff's Fourth Amendment claim, it is unnecessary to consider Officer Martinez's alternative contention that such claims are barred by the running of the applicable statute of limitations.  (D.E. 82, p. 8).

[4] While Plaintiff alleges in his complaint that the events leading to his detention at the hospital occurred on August 24, 2016, the uncontroverted summary judgment presented establishes the events occurred on August 23, 2016.

scene, he noticed that Plaintiff was sweating profusely and "mumbling things that made no sense." (D.E. 83-2 at ¶ 5). Officer Chavana then placed Plaintiff in handcuffs. (*Id.* at ¶ 6).

Officer Chavana requested an Emergency Service Unit to be dispatched to that location. (*Id.* at ¶ 7). When the ambulance arrived, EMS took Plaintiff's vital signs and determined that Plaintiff needed to go to the hospital. (*Id.*). Plaintiff informed the EMTs that he had discontinued his "prescription psych medications." (D.E. 85, p. 30).

Officer Chavana rode with Plaintiff inside the ambulance that transported Plaintiff to the Christus Spohn Kleberg Memorial Hospital. (D.E. 83-2 at ¶ 8). On the way to the hospital, Plaintiff became excited and started mumbling incoherent words. (*Id.*). Officer Chavana stayed with Plaintiff at the hospital as a precaution in case he became agitated and caused difficulties with the hospital staff. (*Id.* at ¶ 9). Ten or fifteen minutes after arriving at the hospital and after Plaintiff calmed down, Officer Chavana removed the handcuffs and left Plaintiff at the hospital under the care of the hospital staff. (*Id.* at ¶ 10). Officer Chavana did not interact with Plaintiff again that day. (*Id.* at ¶ 11).

Plaintiff underwent a mental health evaluation later that day from Carlos Saenz, a crisis screener from the Coastal Plains Community Center. (D.E. 85, pp. 13-15). After the evaluation, Saenz arranged for Plaintiff's admission into the Rio Grande State Center in Harlington, Texas. (*Id.* at 15).

### *(3)   Analysis of Fourth Amendment Claim Against Officer Chavana*

Officer Chavana contends that his temporary handcuffing of Plaintiff while he was taken to the hospital did not constitute an arrest or seizure of Plaintiff in violation of the Fourth Amendment.  (D.E. 83, p. 4).  Even assuming that Officer Chavana's conduct constituted a seizure, he contends that is was supported by probable cause.  (*Id.*, pp. 4-5).  Plaintiff responds that Officer Chavana's conduct constituted a seizure or arrest without probable cause.  (D.E. 92, p. 1).

The probable cause standard under the Fourth Amendment "applies in the context of a seizure of the mentally ill."  *Cantrell v. City of Murphy*, 666 F.3d 911, 923 n.8 (5th Cir. 2012).   In Texas, a peace officer has probable cause to detain a person for an emergency psychiatric evaluation without a warrant if "(1) the officer has reason to believe and does believe that a person is mentally ill and because of that illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained; and (2) believes that there is not sufficient time to obtain a warrant before taking the person into custody." *Id.* at 923 (citing Tex. Health & Safety Code § 573.001). This statute defines mental illness as an illness, disease, or condition, other than epilepsy, senility, alcoholism, or mental deficiency, that (1) substantially impairs a person's thought, perception of reality, emotional process, or judgment; or (2) grossly impairs behavior as demonstrated by recent disturbed behavior.  Tex. Health & Safety Code § 571.003(14).

A "substantial risk" of serious harm to the person or others may be demonstrated by "(1) the person's behavior, or (2) evidence of severe emotional distress and deterioration

in the person's mental condition to the extent that the person cannot remain at liberty." Tex. Health & Safety Code § 573.001(b).  An officer may base his or her belief that the person meets the criteria for apprehension on either "a representation of a credible person," or "the conduct of the apprehended person or the circumstances under which the apprehended person is found."  *Id.* § 573.001(c)(1)-(2).  Lastly, an officer who detains a person under those provisions "shall immediately" take the individual to "the nearest appropriate inpatient mental health facility" or an otherwise designated mental health or emergency facility.  *Id.* § 573.001(d)(1)(A)-(B).

The unrebutted summary judgment evidence establishes that Officer Chavana placed Plaintiff in handcuffs while transporting him by ambulance from the Coastal Bend College to the hospital for a mental health examination.  Plaintiff testified at the *Spears* hearing that he refused to go inside the ambulance and was warned by Officer Chavana that he would be restrained if he refused to comply.  (D.E. 98, p. 39).  The undersigned concludes for purposes of this summary judgment motion that Officer Chavana's detention of Plaintiff constituted a "seizure" for Fourth Amendment purposes.  *See Pena v. Givens*, 637 F. App'x 775, 780 (5th Cir. 2015) ("This Court has held implicitly that a person taken into custody by police officers under Texas Health and Safety Code § 573.001 is seized under the Fourth Amendment.") (citation omitted).

Officer Chavana has presented unrebutted summary judgment evidence demonstrating that: (1) he responded to a call that Plaintiff was causing a disturbance at the Coastal Bend College where he was reportedly banging his head against a wall and

yelling at students (D.E. 83-2 at ¶ 3; D.E. 85, p. 13); (2) when he arrived at the scene, Officer Chavana observed Plaintiff sweating profusely and mumbling incoherent words D.E. 83-2 at ¶ 5); (3) after an ambulance arrived at the scene on Officer Chavana's request, EMS took Plaintiff's vital signs and determined that Plaintiff needed to go to the hospital (D.E. 83-2 at ¶ 7); and (4) Plaintiff informed the EMTs that he had discontinued his "prescription psych medications" (D.E. 85, p. 30).

Based on the competent summary judgment evidence presented, Officer Chavana had reason to believe Plaintiff was mentally ill and a substantial risk of harm to himself and/or others due to experiencing a psychiatric episode at the Coastal Bend College. *See Rich*, 920 F.3d at 295-96 (finding that police officers had probable cause to detain mentally ill plaintiff who was experiencing psychiatric episode that posed a risk of harm to others). Because Officer Chavana had probable cause to temporarily detain Plaintiff and transport him to a hospital for a mental health examination, his seizure of Plaintiff was constitutional under the Fourth Amendment.  Accordingly, when viewing the evidence in a light most favorable to Plaintiff, there is no genuine dispute of any material fact regarding whether Officer Chavana had probable cause to detain Plaintiff on August 23, 2016.[5]

Because Plaintiff has failed to state a Fourth Amendment false arrest claim against Officer Chavana, it is unnecessary to examine whether his actions were objectively

---

[5] The unrebutted summary judgment evidence shows that Officer Chavana left Plaintiff soon after arriving at the hospital on August 23, 2016 and was not present later that night when Plaintiff was detained following the use of force by Defendants Wright, Del Moral, and Gonzalez.  It is, therefore, unnecessary to consider whether Officer Chavana violated Plaintiff's Fourth Amendment rights in connection with his detention following the use of force.

reasonable.  *See Pearson*, 555 U.S. at 236; *Dyer*, 964 F.3d at 380.  Thus, the undersigned respectfully recommends that Officer Chavana is entitled to qualified immunity as well as summary judgment with respect to Plaintiff's Fourth Amendment false arrest claim brought against him.[6]

### C. Summary Judgment Motion filed by Defendants Wright, Del Moral, and Gonzalez

#### (1) Summary Judgment Evidence

The summary judgment evidence presented by Defendants' Wright, Del Moral, and Gonzalez (collectively, "Kleberg County Defendants") includes:

Exh. 1:       Officer Chavana Declaration (D.E. 78-1).

Exh. 2:       Relevant Portions of Plaintiff's Medical Records (D.E. 81-1).

Exh. 3:       Relevant Portions of Plaintiff's Coastal Plains Mental Health Records (D.E. 81-2).

Exhs. 4 and 4A:   Sgt. Wright's Declaration and Report (D.E. 78-2).

Exh. 5 and 5A:    Deputy Del Moral's Declaration and Report (D.E. 78-3.

Exh. 6 and 6A     Deputy Gonzalez's Declaration and Report (D.E. 78-4).

Exh. 7A:      The Docket Report and Plaintiff's Petition filed in *Thomas v. Head*, Case No. 2:07-CV-16 (S.D. Tex.) (D.E. 78-5).

Exh. 7B:      The Docket Report, Plaintiff's Complaint, and Orders entered in *Thomas v. Brooks County Detention Center, et al.*, Case No. 2:08-CV-304 (S.D. Tex.) (D.E. 78-6).

Exh. 7C:      The Docket Report and Order of Dismissal in *Thomas v. Anderson, et al.*, Case No. 4:13-CV-1199 (S.D. Tex.) (D.E. 78-7).

---

[6] Because Officer Chavana is entitled to qualified immunity as to Plaintiff's Fourth Amendment claim, it is unnecessary to consider Officer Chavana's alternative contention that such claims are barred by the running of the applicable statute of limitations.  (D.E. 83, pp. 6-7).

Exh. 7D:      The Docket Report, Plaintiff's Complaint, and Orders entered in *Thomas v. Torres, et al.*, Case No. 2:18-CV-1 (S.D. Tex.) (D.E. 78-8).

Exh. 8:       Excerpts from Discovery Responses (D.E. 78-9).

Exh. 9:       Declaration of Jun Rocaberte (D.E. 78-10).

Exh: 10:      Relevant Portions of Plaintiff's Rio Grande Mental Health Records (D.E. 81-3).

Exh. 11A to 11D:   State Court Motions to Revoke and Judgments (D.E. 78-11).

Exh. 12:      Transcript on Motion to Revoke Hearing, conducted on January 11, 2017 in the Kleberg County District Court (D.E. 78-12).

Exh. 13:      Declaration of Brian Miller (D.E. 78-13).

Plaintiff's summary judgment evidence includes:

- Plaintiff's verified complaint (D.E. 1).

- Transcript of the July 19, 2018 *Spears* Hearing (D.E. 98).

- Dental Record dated November 26, 2019 (D.E. 93-1).

- Indigent Supply Request (D.E. 93-2).

### *(2)   Undisputed Summary Judgment Evidence*

During the early afternoon of August 23, 2016, after being brought to the hospital by Officer Chavana and admitted, nurse Amy Vivion reported that Plaintiff was rambling and changing his story.  (D.E. 81-1, p. 23).  Plaintiff informed Vivion that he was teaching at the college.  (*Id.*).  Later that afternoon, Vivion asked the Coastal Plains Community Center to send a crisis screener to evaluate Plaintiff.  (*Id.* at 25).  The crisis screener, Carlos Saenz, arrived at 6:22 p.m. and reported Plaintiff's claim of having "a hearing aid

implanted in him so he could watch 'C-SPAN.'"  (*Id.* at 13).  Plaintiff further "expressed multiple delusions and strange behavior."  (*Id.* at 14).

Saenz arranged for Plaintiff's admission into the Rio Grande State Center in Harlington, Texas.  (*Id.* at 15).  At 7:57 p.m. nurse Jun Rocaberte notified the Kleberg County Sheriff's Office about the need to transport Plaintiff to the Rio Grande State Center. (*Id.* at 26).  Plaintiff initially refused to cooperate with the corrections officer who had arrived to transport Plaintiff.  (D.E. 78-2, p. 3).  Sgt. Wright responded to assist the corrections officer.  (*Id.*).  Sgt. Wright called for back-up after Plaintiff refused to cooperate.  (*Id.*).  Deputies Del Moral and Gonzalez arrived to assist Sgt. Wright in restraining Plaintiff.  (*Id.*).

Later that evening, the Kleberg County Defendants used force during the course of restraining Plaintiff and ultimately placing him in a Kleberg County patrol vehicle.  (*Id.*; D.E. 78-3 at 3; D.E. 78-4 at 3; D.E. 98 at 51, 53-57).  Following Plaintiff's altercation with the Kleberg County Defendants, Plaintiff was taken to the Kleberg County Jail that night and charged with resisting arrest.  (*Id.*; D.E. 78-3 at 3; D.E. 78-4 at 3).  Plaintiff was taken to the Rio Grande State Center the next day on August 24, 2016.  (D.E. 78-2 at 3).  On August 24, 2016, Plaintiff underwent a physical examination where no physical injury was reported.  (D.E. 81-3, pp. 111, 137-40).

### (3)   *Statute of Limitations*

Federal civil rights actions instituted in Texas, such as those brought pursuant to § 1983, are deemed analogous to personal injury claims, and, therefore, the applicable limitations period is the two years fixed by Tex. Civ. Prac. & Rem. Code § 16.003(a). *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).   Accrual of a § 1983 claim is governed by federal law. *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).

A cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). In other words, "the limitations period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) (quoting *Piotrowsky*, 237 F.3d at 576). Excessive force claims generally accrue on the date when the force is inflicted. *See Price v. City of San Antonio*, 431 F.3d 890, 893-94 (5th Cir. 2005); *Armstrong v. Serpas*, 670 F. App'x 851, 852 (5th Cir. 2016).

The Kleberg County Defendants assert in their summary judgment motion that the expiration of the applicable two-year statute of limitations bars Plaintiff's claims against them. (D.E. 78, p. 4-16).   They contend that: (1) Plaintiff's claims against them arise from events that occurred on August 23, 2016; (2) Plaintiff did not name defendants in his original complaint filed on May 3, 2018; and (3) none of the Kleberg County Defendants were added to the case before the expiration of the two-years limitation period on August 23, 2018.   (D.E 78, p. 4).

Plaintiff responds that the Court has already decided the statute of limitations' issue in its Order entered on April 1, 2020.  In denying the Kleberg County Defendants' motions to dismiss, Senior District Judge Tagle determined in the April 1, 2020 Order that Plaintiff's complaint was timely filed as to these defendants under the doctrine of equitable tolling.  The Court set forth the applicable law regarding equitable tolling as follows:

> Equitable tolling is sparingly used by Texas and federal courts and typically depends on whether a plaintiff diligently pursued their rights and the presence of exceptional circumstances. *Rodriguez v. Holmes*, 963 F.2d 799, 805 (5th Cir. 1992). Equitable tolling may not be used to avoid a plaintiff's own negligence. *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012). "Federal courts have typically extended equitable [tolling] relief only sparingly[:] where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked ... into allowing the filing deadline to pass." *Crostley v. Lamar Cty., Texas*, 717 F.3d 410, 421–22 (5th Cir. 2013) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 90 (1990)). "Traditional equitable principles preclude a court from invoking equitable tolling, however, when the party seeking relief has an adequate legal or statutory remedy to avoid the consequences of the statute of limitations." *Lambert v. United States*, 44 F.3d 296, 300 (5th Cir. 1995)[.]

> The Fifth Circuit has found equitable tolling warranted when a Plaintiff files a complaint well within the statute of limitations period and moves for discovery of the identity of unknown defendants. *Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007). When a complaint is filed just days before the end of the statute of limitations period the Fifth Circuit has found equitable tolling not warranted for the addition of additional defendants. *Balle v. Nueces Cty., Texas*, No. 16-40789, 2017 WL 11509904, at *4 (5th Cir. June 15, 2017).

(D.E. 53, pp. 3-4).

Despite the Court's ruling, the Kleberg County Defendants contend that Plaintiff's lack of diligence prevents equitable tolling from applying in this case because: (1) Plaintiff had ample prior experience with federal courts' screening of prisoner claims; and (2) the record negates any claim of diligence on Plaintiff's part.  (D.E. 78, pp. 6-16).   The undersigned disagrees.

The Kleberg County Defendants have submitted evidence indicating that Plaintiff filed several previous civil rights cases with the Court and is, therefore, no stranger to bringing federal suits.  (D.E. 78-6, 78-7, and 78-8).  These defendants, however, cite no case law to suggest that Plaintiff's litigiousness in prior, unrelated cases supports the notion that he failed to diligently pursue his rights with respect to the identification of the defendants sued in this action.

The Kleberg County Defendants otherwise have presented no competent summary judgment evidence to suggest that Plaintiff failed to act with proper due diligence in identifying the John Doe defendants.  *See Crostley*, 717 F.3d at 421; *Green*, 260 F. App'x at 719.  Senior Judge Tagle found in the April 1, 2020 Order that: (1) Plaintiff filed this action over 100 days before the end of his statute of limitations; (2) discovery was then stayed for 144 days until the defendants filed an answer; (3) some of the defendants first filed answers on October 2, 2018; and (4) when discovery was available for Plaintiff, he was able to discover the identity of the unknown parties, including the Kleberg County Defendants, within 85 days.  (D.E. 53, p. 4).

Senior Judge Tagle concluded in the April 1, 2020 Order that it was proper to equitably toll the limitations for 144 days in the interests of justice and that Plaintiff's complaint was timely filed as to the Kleberg County Defendants.  (D.E. 53, p. 4).  These defendants have not convinced the undersigned that Judge Tagle's conclusions should be disturbed on summary judgment.  Accordingly, when viewing the evidence in the light most favorable to Plaintiff, the undersigned respectfully recommends that the Kleberg County Defendants' summary judgment motion (D.E. 78) be denied as to whether Plaintiff's claims against them are barred by the expiration of the limitations' period.

### *(4)   Analysis of Excessive Force Claims*

The Fourth Amendment protects a person being arrested from the use of excessive force.  *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998).  As a general guideline, "[*a*]*ll* claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original).  To state a claim for excessive force during the course of an arrest or seizure, a plaintiff "must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (internal quotations and citation omitted).

To satisfy the first element of the claim, a plaintiff must demonstrate that the conduct resulted in more than *de minimis* injury. *See Westfall v. Luna*, 903 F.3d 534, 548 (5th Cir. 2018) (citing *Brooks v. City of W. Point*, 639 F. App'x 986, 990 (5th Cir. 2016)). *See also Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011) (citing *Glen v. City of Tyler,* 242 F.3d 307, 314 (5th Cir. 2001) (affirming dismissal on summary judgment of pretrial detainee's excessive force claim where he failed to allege he suffered any physical injury)); *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." (internal quotation marks omitted)).   The second and third excessive force elements "collapse into a single objective-reasonableness inquiry," *Pena*, 879 F.3d at 619. This inquiry is guided by considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).

The Kleberg County Defendants contend that the evidence demonstrates no excessive force was used against Plaintiff on August 23, 2016 and Plaintiff suffered no injury as a result of the use of force.  (D.E. 78, p. 17).  These defendants contend, therefore, that Plaintiff has failed to overcome their entitlement to qualified immunity.  (D.E. 78, pp. 17-19).  Plaintiff responds that the evidence presented in this case is sufficient to allow this case to go to trial.  (D.E. 93, p. 1).

Competent summary judgment evidence submitted by the Kleberg County Defendants reflects that: (1) Plaintiff was served at the hospital with an emergency medical warrant for his arrest and detention by Kingsville police; (2) Plaintiff actively and aggressively resisted any attempts to restrain and arrest him inside both the hospital and the patrol car; and (3) these defendants used force to restrain Plaintiff in the form of pushing on Plaintiff's chest, drawing a taser on several occasions, and placing Plaintiff in handcuffs after a brief struggle.  (D.E. 78-2, pp. 2-3; D.E. 78-3, pp. 2-3; D.E. 79-3, pp. 2-3; D.E. 81, p. 12).

Plaintiff testified at the *Spears* hearing that, during the course of being arrested and detained on August 23, 2016: (1) two Kleberg County Defendants grabbed and slammed him against the wall in the hospital, causing pain and a chipped tooth; and (2) two other Kleberg County Defendants used force when placing Plaintiff in the patrol car by striking Plaintiff all over his body and choking Plaintiff, causing pain and bruises on Plaintiff's arm for several days.  (D.E. 98, pp. 53-57).  Plaintiff, however, does not substantiate his claims of injury with medical records or other evidence.[7]

In contrast, Nurse Rocaberte, who was working the night shift at the hospital at the relevant time, stated in her affidavit that she never saw any of the Kleberg County Defendants throw Plaintiff into a counter, wall, door, or other object.  (D.E. 78-10, p. 2).

---

[7] Plaintiff has attached a dental record, dated November 26, 2019, which shows that he received treatment for restoration of a tooth.  (D.E. 93-1).  This evidence, however, fails to indicate that the purpose of the dental work was to treat a chipped tooth allegedly suffered in connection with the use of force over three years earlier on August 23, 2016.

She further stated that she did not witness Plaintiff suffer any injuries during the course of Plaintiff being restrained.  (*Id.*).

Objective medical records show that Plaintiff was examined by medical personnel on the day following the use of force but that there were no reported injuries.  (D.E. 81-3, pp. 111, 137-40).  The objective medical records demonstrate that any injuries suffered in connection with the use of force on August 23, 2016 was no more than *de minimis*.  *See Gobert v. Caldwell,* 463 F.3d 339, 347 n. 24 (5th Cir. 2006) ("'Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's [civil rights] allegations'"); *Wilburn v. Shane,* 193 F.3d 517, 1999 WL 706141, at *1 (5th Cir. Aug. 20, 1999) (finding it "implausible that the hospital would not have recorded the severe injuries" that plaintiff alleged in an excessive force case).

Plaintiff, therefore, has no basis for a Fourth Amendment excessive force claim due to the lack of an actionable injury.  Furthermore, the unrebutted summary judgment evidence shows that force was used in a reasonable manner against Plaintiff who required mental-health care and who was not cooperating and actively resisting the Kleberg County Defendants' efforts to restrain Plaintiff and gain his compliance with their orders.

Accordingly, even when viewing the evidence in a light most favorable to Plaintiff, there is no genuine dispute of any material fact regarding whether excessive force in violation of the Fourth Amendment was used against Plaintiff on August 23, 2016 by the Kleberg County Defendants.  Because Plaintiff has failed to state a Fourth Amendment excessive force claim against the Kleberg County Defendants, it is unnecessary to examine

whether their actions were objectively reasonable.  *See Pearson*, 555 U.S. at 236; *Dyer*, 964 F.3d at 380.  Thus, the undersigned respectfully recommends that the Kleberg County Defendants are entitled to qualified immunity as well as summary judgment with respect to Plaintiff's excessive force claims.

## V.    RECOMMENDATION

Based on the foregoing, the undersigned respectfully recommends that the Kleberg County Defendants' Motion for Summary Judgment (D.E. 78) be **DENIED in part** and **GRANTED in part**.  Their summary judgment motion should be denied as to whether Plaintiff's claims against them are barred by the expiration of the limitations' period.  Their summary judgment motion should be granted to the extent that they are entitled to qualified immunity with respect to Plaintiff's Fourth Amendment excessive force claims against them in their individual capacities.  Such claims, therefore, should be **DISMISSED WITH PREJUDICE**.

The undersigned respectfully recommends further that the summary judgment motions filed by Defendants Martinez and Chavana (D.E. 82, 83) be **GRANTED,** that these defendants be entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claims against them in their individual capacities, and that such claims be **DISMISSED WITH PREJUDICE**.

Respectfully submitted on March 31, 2021.

Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).